# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| DEBORAH M.[1],<br>    Plaintiff, | Case No. 2:22-cv-3963<br>Watson, J.<br>Litkovitz, M.J. |
| vs. | |
| COMMISSIONER OF<br>SOCIAL SECURITY,<br>    Defendant. | **REPORT AND<br>RECOMMENDATION** |

Plaintiff Deborah M. brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 14) and the Commissioner's response in opposition (Doc. 18).

## I. Procedural Background

Plaintiff protectively filed her application for DIB on July 17, 2020, alleging disability beginning October 17, 2017, due to ankle and feet problems, fibromyalgia, diabetes, hypertension, asthma, migraine, hyperlipidemia, GERD, depression, anxiety, and degenerative disc disease. (Tr. 188-94, 209; *see also* Tr. 15). The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) M. Drew Crislip. Plaintiff, a vocational expert (VE), and two medical experts, appeared by telephone and testified at the ALJ hearing on November 4, 2021. (Tr. 35-64). On November 26, 2021, the ALJ issued a decision denying plaintiff's DIB

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

application. (Tr. 12-34). This decision became the final decision of the Commissioner when the Appeals Council denied review on September 14, 2022. (Tr. 1-6).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] last met the insured status requirements of the Social Security Act on December 31, 2019.

2. The [plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of October 17, 2017 through her date last insured of December 31, 2019 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the [plaintiff] had the following severe impairments: left ankle sprain with residuals including osteoarthritis, degenerative disc disease of the lumbar spine, fibromyalgia, and asthma (20 CFR 404.1520(c)).

4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] find[s] that, through the date last insured, the [plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) within the following parameters: She is able to lift, carry, push, and pull 10 pounds occasionally, less than 10 pounds frequently. She is able to sit six hours in an eight-hour workday. She is able to stand/walk two hours in an eight-hour workday. She needs to use a cane for ambulation. She must alternate from sitting to standing or walking for two to three minutes after every hour and from standing or walking to sitting for two to three minutes after every half hour, but would remain on task during position changes, some covered by time off task and typical breaks. She must be able to elevate the left lower extremity to footstool level whenever seated. The [plaintiff] is limited to occasional operation of foot controls with the left foot. She is limited to frequent overhead reaching. She is able to climb ramps and stairs, balance (navigate uneven or slippery terrain), and stoop occasionally. She should never climb ladders, ropes,

or scaffolds, kneel, crouch, or crawl.  She should never work at unprotected heights, in proximity to moving mechanical parts of dangerous machinery, and never operate a motor vehicle.  The [plaintiff] is able to work in weather frequently.  She is limited to occasional work in humidity, wetness, pulmonary irritants, and extreme heat.  She should never work in extreme cold or vibration.  She should work in no louder than moderate noise.  There should be no exposure to flashing, glaring, or strobing lights, although typical office fluorescent lights are endurable without restriction.  In addition to normal breaks, the [plaintiff] would be off task 10 percent of time in an eight-hour workday.

6. Through the date last insured, the [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[2]

7. The [plaintiff] was born [in] . . . 1972 and was 47 years old, which is defined as a younger individual age 45-49, on the date last insured (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569 and 404.1569a).[3]

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from October 17, 2017, the alleged onset date, through December 31, 2019, the date last insured (20 CFR 404.1520(g)).

(Tr. 17-29).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

---

[2] Plaintiff's past relevant work was a home health aide, a medium, semi-skilled position; an office cleaner, a medium, unskilled position; and retail sales, a light, semi-skilled position.  (Tr. 27, 56-57).
[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative sedentary, unskilled occupations in the national economy such as addresser (104,000 jobs); call out operator (55,000 jobs); and circuit board worker (166,000 jobs).  (Tr. 28-29, 58).

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

**D. Specific Error**

In her sole assignment of error, plaintiff alleges the ALJ erred in evaluating the opinions of her treating pulmonologist, Dr. Jing Wang, and occupational therapist, Mr. Robert Crossmon. (Doc. 14). Plaintiff argues the ALJ failed to properly evaluate the supportability and consistency factors under 20 C.F.R. § 404.1520c, and the ALJ's evaluation of these opinions was therefore not supported by substantial evidence. (*Id*. at PAGEID 1483-87). The Commissioner argues the ALJ's decision is supported by substantial evidence, and the ALJ properly evaluated the opinions

from Dr. Wang and Mr. Crossmon consistent with the regulations and based on the record evidence. (Doc. 18).

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions. *See* 20 C.F.R. § 1520c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions. *Id.* The Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "explain how [he] considered the supportability and

consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2). Conversely, the ALJ "may, but [is] not required to, explain" how he considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

### 1. Dr. Jing Wang

Plaintiff began treating with Dr. Jing Wang in August 2020. (Tr. 1367, 1418). On March 25, 2021, Dr. Wang completed a medical assessment form on behalf of plaintiff in which she included her opinions relating to plaintiff's impairment of "severe persistent asthma." (Tr. 1419-25). Dr. Wang identified the clinical findings and laboratory and pulmonary test results that showed plaintiff's asthma and opined that plaintiff experienced shortness of breath, chest tightness, wheezing, acute asthma, bronchitis, and coughing as a result of her impairment. (Tr. 1419). Dr. Wang opined that plaintiff's asthma attacks were severe, occurred a "few times" per year, and required prednisone and emergency room visits. (Tr. 1420). Dr. Wang opined that plaintiff was incapacitated one to two weeks during an average asthma attack. (*Id.*). Dr. Wang further opined that plaintiff's symptoms were "[o]ften" severe enough to interfere with plaintiff's attention and concentration. (Tr. 1420-21). Dr. Wang stated that plaintiff was capable of low stress jobs, and plaintiff would require a "less physically demanding job due to easily becoming winded/wheezy." (Tr. 1421). Dr. Wang opined that plaintiff could sit more than two hours at one time and stand for 30 minutes at one time; she could sit for at least six hours and stand/walk

7

less than two hours in an eight-hour workday; and she needed to take two to three unscheduled breaks during an eight-hour shift where she would need to sit for a few minutes before returning to work. (Tr. 1422-23). Dr. Wang opined that plaintiff could "[o]casionally" lift and carry less than ten pounds and "[n]ever" lift and carry ten, twenty, or fifty pounds in a competitive work situation; she could stoop ten percent and crouch zero percent of the time during an eight-hour working day; she should avoid all exposure to extreme cold and heat, high humidity, fumes, odors, dusts, gases, perfumes, cigarettes smoke, soldering fluxes, solvents/cleaners, and chemicals; and she would be absent from work as a results of her impairments or treatment about once per month on average. (Tr. 1423-24).

On September 23, 2021, Dr. Wang completed a second medical assessment form on behalf of plaintiff in which she opined that based on her evaluation of plaintiff and familiarity with her diagnosis of severe persistent asthma, it was "within reasonable medical probability" that the restrictions and limitations identified in the March 25, 2021 form had been applicable since December 31, 2019, plaintiff's date last insured. (Tr. 1418). Dr. Wang explained that "[a]sthma is a chronic condition & given the severity of [plaintiff's] asthma[,] it is likely she was quite debilitated by this for several months if not years prior to her initial visit with me." (*Id.*).

The ALJ found Dr. Wang's opinions "unpersuasive" for the sole reason that they were "well outside of the date last insured." (Tr. 26). The ALJ stated that "care was not established until August 2020. The date last insured is December 31, 2019. Therefore, h[er] opined limitations do not relate to the period at issue." (*Id.*).

Plaintiff alleges the ALJ incorrectly determined that Dr. Wang's opinions did not relate to the period at issue because Dr. Wang specified it was her opinion, within reasonable medical probability, that her opined limitations had been applicable since the date last insured. (Doc. 14

8

at PAGEID 1486, citing Tr. 1418). Plaintiff further alleges that the ALJ failed to "directly articulate" the supportability and consistency factors as required by 20 C.F.R. § 404.1520c(c) when evaluating Dr. Wang's opinions. The Court agrees.

First, the ALJ erred in finding Dr. Wang's opinions unpersuasive on the sole basis that the opinions were made after plaintiff's date last insured. Although post-insured status evidence of new developments in a claimant's condition is generally not relevant, *Bagby v. Harris*, 650 F.2d 836 (6th Cir. 1981), such evidence may be examined, however, when it establishes that the impairment existed continuously and in the same degree from the date plaintiff's insured status terminated. *See Johnson v. Sec'y of H.E.W.*, 679 F.2d 605 (6th Cir. 1982). To the extent that evidence subsequent to the date last insured is relevant, it "'must relate back to the claimant's condition prior to the expiration of [the] date last insured.'" *Thomas v. Comm'r of Soc. Sec.*, No. 2:18-cv-108, 2019 WL 2414675, at *3 (S.D. Ohio June 7, 2019) (quoting *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003)). *See Grisier v. Comm'r of Soc. Sec.*, 721 F. App'x 473, 477 (6th Cir. 2018) (finding that "post-date-last-insured medical evidence generally has little probative value unless it illuminates the claimant's health before the insurance cutoff date") (citations omitted). *See also King v. Sec'y of H.H.S.*, 896 F.2d 204, 205-06 (6th Cir. 1990) (post-expiration evidence may be considered, but it must relate back to plaintiff's condition prior to the expiration of the date last insured).

Here, the ALJ found Dr. Wang's opinions unpersuasive on the sole basis that they were made "well outside of the date last insured." (Tr. 26). The ALJ explained that Dr. Wang's "opined limitations do not relate to the period at issue" because "Dr. Wang stated care was not established until August 2020" and the "date last insured is December 31, 2019." (*Id.*). However, in making this finding, the ALJ failed to consider or reference Dr. Wang's September

9

23, 2021 statement which articulated that the restrictions and limitations she had identified in the March 25, 2021 form had been applicable since December 31, 2019, plaintiff's date last insured. (Tr. 1418). Given the ALJ's silence on Dr. Wang's opinions contained in the September 23, 2021 assessment form, the Court cannot discern whether the ALJ overlooked, ignored, or rejected this evidence.

Second, and more importantly, the ALJ's decision finding Dr. Wang's opinions "unpersuasive" is not supported by substantial evidence for the dispositive reason that he did not address its supportability or consistency—mandatory analyses under the new regulations. (Tr. 25-26). *See* 20 C.F.R. § 404.1520c(b)(2) ("[W]e *will explain* how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision.") (emphasis added). The ALJ omitted any discussion of supportability or consistency, and instead solely focused his discussion on the timeliness of her opinions. In the absence of any explanation of these two mandatory factors, the Court cannot conclude that the ALJ's evaluation of Dr. Wang's opinions is supported by substantial evidence. *See, e.g., William G. v. Comm'r of Soc. Sec.*, No. 2:22-cv-213, 2022 WL 4151381, at *8 (S.D. Ohio Sept. 13, 2022), *report and recommendation adopted*, 2022 WL 16745337 (S.D. Ohio Nov. 7, 2022) ("While the ALJ may ultimately find Dr. Babson's opinion unsupported, he must explain his reasoning.") (citing 20 C.F.R. § 404.1520c(b)(2)). As such, remand is appropriate to reevaluate Dr. Wang's opinions in accordance with the factors articulated in 20 C.F.R. § 404.1520c.

### 2. Occupational Therapist Mr. Robert Crossmon

Plaintiff was referred to Occupational Therapist Mr. Crossmon for a functional capacity evaluation (FCE) by one of her primary care physicians at Mount Carmel East, Dr. Jonathan

Feibel. (Tr. 384). The FCE was performed on October 2, 2018. (*Id*.). Following the evaluation, Mr. Crossmon opined that plaintiff could function within the less than sedentary strength range for infrequent lifting of up to three pounds thigh to chest level (unilateral lift) and at a negligible amount at the occasional and frequent lifting levels. (Tr. 399). Mr. Crossmon further opined that plaintiff could unilaterally carry up to three pounds at an infrequent rate and a negligible amount at an occasional rate; she could push up to five pounds of force up to five feet and pull up to three pounds of force up to three feet at an infrequent rate; and she could push and pull a negligible amount at an occasional rate. (*Id*.). Mr. Crossmon recommended plaintiff push rather than pull whenever possible; she should limit forward bending, squatting, sustained low-level work, and lifting from below thigh level; she should alternate standing/walking with sitting every ten minutes to reduce lower extremity stresses; she should avoid stair and ladder climbing; and she should continue with exercises from current outpatient physical therapy to help maintain and further gain functional tolerances and abilities. (*Id*.).

The ALJ found Mr. Crossmon's opinions "unpersuasive." (Tr. 25). In the entirety, the ALJ reasoned that "different standards are used for Workers' Compensation and some terminology was vague, such as 'negligible' and 'infrequent.'" (*Id*.).

Plaintiff argues the ALJ erred in evaluating Mr. Crossmon's opinions under 20 C.F.R. § 404.1520c. (Doc. 14). Plaintiff contends that contrary to the ALJ's statement that vague terminology was used, Mr. Crossmon's "evaluation specifically defines infrequent lifting as 'less than 8 lifts, carries, pushes or pulls in an 8 hour day'" and "[t]he term 'negligible' was used when the Plaintiff was not able to perform even at the 'infrequent' standard." (*Id*. at PAGEID 1485, citing Tr. 286, 298). Plaintiff also argues that even if some terminology was vague in the

11

FCE, "the ALJ fails to articulate why the other non-vague limitations were not incorporated into the formulated" RFC. (*Id*. at PAGEID 1486).

First, the ALJ's finding that Mr. Crossmon's opinions contained in the FCE are unpersuasive on the basis that they were made for "Workers' Compensation" purposes (Tr. 25) is unsupported by the record evidence. While the ALJ is correct that "different standards are used for Workers' Compensation" (*Id*.)[4], Mr. Crossmon did not make a determination as to plaintiff's ultimate disability status. Rather, Mr. Crossmon made specific recommendations and opinions on plaintiff's functional capacity following testing (Tr. 384-99), and the ALJ made no attempt to evaluate these recommendations and opinions pursuant to 20 C.F.R. § 404.1520c(b)(2). For example, the ALJ did not evaluate Mr. Crossmon's opinions that plaintiff could function within the less than sedentary strength range for infrequent lifting of up to three pounds thigh to chest level (unilateral lift) and at a negligible amount at the occasional and frequent lifting levels; she could unilaterally carry up to three pounds at an infrequent rate and a negligible amount at an occasional rate; she could push up to five pounds of force up to five feet and pull up to three pounds of force up to three feet at an infrequent rate; she could push and pull a negligible amount at an occasional rate; and she should alternate standing/walking with sitting every ten minutes to reduce lower extremity stresses. (Tr. 399). Therefore, the ALJ's finding that Mr. Crossmon's opinions were unpersuasive because they were made for "Workers' Compensation" purposes (Tr. 25) is not supported by substantial evidence.

Second, the ALJ's finding that "some terminology was vague, such as 'negligible' and 'infrequent'" (Tr. 25) is not supported by substantial evidence. The FCE specifically defined

---

[4] The Sixth Circuit has held that "disability for social-security-disability-benefits purposes is a much higher standard than disability for Ohio workers' compensation purposes." *Bayes v. Comm'r of Soc. Sec.*, 757 F. App'x 436, 444 (6th Cir. 2018).

"infrequent" as "less than 8 lifts, carries, pushes or pulls in an 8 hour day." (Tr. 387; *see also* Tr. 399). Moreover, reading the FCE as a whole, it is clear to the Court that Mr. Crossmon used the term "negligible" when plaintiff was unable to perform the test at the "infrequent" level. (*See, e.g.,* Tr. 396 (plaintiff's performance on the carry test was "negligible" because plaintiff "attempted[,] but was not able to perform a bilateral carry"); Tr. 397 (plaintiff's performance on the maximum isoinertial lifting evaluation was deemed "negligible" because plaintiff "attempted[,] but [was] not able to lift off floor level"); Tr. 398 (plaintiff's performance on the lumbar and cervical components of the progressive isoinertial lifting evaluation was marked "negligible" by Mr. Crossmon because plaintiff "attempted[,] but was not able to" perform the test)). Accordingly, the ALJ's finding that some terms were vague, such as "infrequent" and "negligible," is not supported by substantial evidence.

Finally, the Court concludes that the ALJ's assessment of the consistency and supportability of Mr. Crossmon's opinion is not supported by substantial evidence. The ALJ never addressed the supportability and consistency factors as required under 20 C.F.R. § 404.1520c(b)(2). Concerning the consistency factor, the ALJ failed to comply with 20 C.F.R. § 404.1520c(c)(2) in analyzing the consistency of Mr. Crossmon's opinion with the evidence from other medical sources and nonmedical sources. *Cf. Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)) ("It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review."). The regulations require the ALJ to explain how he considered both the supportability and the consistency of Mr. Crossmon's opinions. 20 C.F.R. § 404.1520c(b)(2). *See Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 440 (6th Cir. 2018) ("[A]n ALJ's failure to follow agency procedures does not

13

constitute harmless error when it prevents us from meaningfully reviewing his or her decision. . . ."). *See also Jenna B. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-cv-00176, 2022 WL 4395682, at *6 (S.D. Ohio Sept. 23, 2022) (ALJs are "required to explain their evaluation of the supportability and consistency factors. [20 C.F.R. § 404.1520c(b)(2)]. The regulation therefore imposes a burden of explanation, or mandatory articulation, upon ALJs"). The ALJ failed to identify the records on which he relied, or the testimony he found inconsistent with, Mr. Crossmon's opinions to enable this Court to meaningfully review the ALJ's consistency finding. There is no analysis concerning the consistency factor whatsoever in the ALJ's discussion of Mr. Crossmon's opinions. (*See* Tr. 25).

Moreover, concerning the supportability factor, the ALJ failed to explain the extent to which Mr. Crossmon's opinions were purportedly not supported by relevant objective medical evidence and Mr. Crossmon's supporting explanations. *See William G.*, 2022 WL 4151381, at *12 ("The ALJ repeatedly failed to evaluate supportability properly. That is, he did not explain how the objective medical evidence or supporting explanations for the medical opinions were considered."). Accordingly, the ALJ's evaluation of Mr. Crossmon's opinions is not supported by substantial evidence, and remand is appropriate to reevaluate Mr. Crossmon's opinions in accordance with the factors articulated in 20 C.F.R. § 404.1520c.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's statement of errors (Doc. 14) be **SUSTAINED** and the Commissioner's non-disability finding be **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS** consistent with this Report and Recommendation.

Date: 10/24/2023

Karen L. Litkovitz
Chief United States Magistrate Judge

14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

DEBORAH M.,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 2:22-cv-3963
Watson, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).